**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ERICK PARDO, | Case No: |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| Neogen Corporation, James C. Borel, William T. Boehm, Ronald D. Green, Ralph A. Rodriguez, James P. Tobin, Darci L. Vetter, And Catherine E. Woteki, | |
| Defendants. | |

## COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff Erick Pardo ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## NATURE OF THE ACTION

1.     This is an action against Neogen Corporation ("Neogen" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed merger (the "Proposed Transaction") of Neogen and 3M Company's ("3M") Food Safety Business.

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, and the alleged misstatements entered and the subsequent damages occurred in this District.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff is, and has been at all relevant times hereto, an owner of Neogen common stock.

7.      Defendant Neogen, together with its subsidiaries, develops, manufactures, and markets various products for food and animal safety worldwide. The Company is incorporated in Michigan. The Company's common stock trades on the NASDAQ under the ticker symbol, "NEOG."

8.      Defendant James C. Borel ("Borel") is Chairman of the Board of the Company.

9.      Defendant William T. Boehm ("Boehm") is a director of the Company.

10. Defendant Ronald D. Green ("Green") is a director of the Company.

11. Defendant Ralph A. Rodriguez ("Rodriguez") is a director of the Company.

12. Defendant James P. Tobin ("Tobin") is a director of the Company.

13. Defendant Darci L. Vetter ("Vetter") is a director of the Company.

14. Defendant Catherine E. Woteki ("Woteki") is a director of the Company.

15. Defendants Borel, Boehm, Green, Rodriguez, Tobin, Vetter, and Woteki are collectively referred to herein as the "Individual Defendants."

16. Defendants Neogen and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

17. On December 14, 2021, Neogen and 3M announced that they had entered into a definitive agreement pursuant to which 3M would combine its Food Safety Business with Neogen. The press release announcing the Proposed Transaction states, in pertinent part:

**NEOGEN to Combine 3M's Food Safety Business With its Existing Operations, Creating a Global Industry Leader**

Creates a pure play Food Security company with pro forma revenue of approximately $1 billion and Adjusted EBITDA of approximately $300 million expected in its first full year post-closing.

Pro forma company expected to have stronger growth through substantial cross synergies in product innovation, sales, marketing, distribution and production; an EBITDA margin profile of approximately 30% and increased exposure to higher growth, lower volatility Food Safety end-markets which will represent approximately 70% of total revenue.

Combined company will have the enhanced geographic footprint, innovative product offerings, digitization capabilities, and financial flexibility to capitalize on robust growth trends in sustainability, food safety and supply chain integrity.

Intended tax-efficient transaction will result in 3M shareholders owning 50.1% of NEOGEN and existing NEOGEN shareholders owning 49.9%.

3M to receive consideration valued at approximately $1 billion, subject to closing and other adjustments.

NEWS PROVIDED BY
**NEOGEN Corporation**
Dec 14, 2021, 06:30 ET
LANSING, Mich., and ST. PAUL, Minn., Dec. 14, 2021 /PRNewswire/ -- NEOGEN Corporation (NASDAQ: NEOG) and 3M (NYSE: MMM) announced today that they have entered into a definitive agreement pursuant to which 3M will separate its Food Safety business and simultaneously combine it with NEOGEN in a transaction that is intended to be tax-efficient to 3M and its shareholders for U.S. federal income tax purposes. The combination will create an innovative leader in the food safety sector with a comprehensive product range and a strategic focus on the category's long-term growth opportunities.

The transaction implies an enterprise value for 3M's Food Safety business of approximately $5.3 billion, including $1 billion in new debt to be incurred by 3M's Food Safety business. This represents an implied multiple of approximately 32x and 27x CY 2022E Adjusted EBITDA pre and post run-rate synergies respectively, based on NEOGEN's closing price as of December 13, 2021. 3M's Food Safety business will fund to 3M consideration valued at approximately $1 billion, subject to closing and other adjustments. The combined company is expected to have an enterprise value of approximately $9.3 billion, based on NEOGEN's closing share price as of December 13, 2021. Under the terms of the definitive agreements, which involve a tax-free "Reverse Morris Trust" structure, existing NEOGEN shareholders will continue to own approximately 49.9% of the combined company, and 3M shareholders will receive approximately 50.1% of the combined company. The Boards of Directors of both NEOGEN and 3M have unanimously approved the transaction.

*     *     *

**Transaction Details**

The transaction involves a tax-free "Reverse Morris Trust" transaction structure, where 3M's Food Safety business will be spun-off or split-off to 3M shareholders and simultaneously merged with a wholly owned subsidiary of NEOGEN. The transaction is intended to be tax-efficient to 3M and 3M's shareholders for U.S. federal income tax purposes. At the completion of the transaction, NEOGEN will issue a number of shares to 3M shareholders such that 3M shareholders will receive approximately 50.1% of the combined company and existing NEOGEN shareholders will continue to own approximately 49.9% of the combined company.

In connection with the transaction, 3M will also receive consideration valued at approximately $1 billion, subject to closing and other adjustments.

NEOGEN's expected pro forma net leverage ratio at close is expected to be less than 2.5x, inclusive of the $1 billion of new debt. Strong expected free cash flow generation and EBITDA growth of the combined business enables rapid deleveraging post-closing.

The transaction is expected to close by the end of Q3 2022, subject to approval by NEOGEN shareholders, receipt of required regulatory approvals and the satisfaction of other customary closing conditions.

**Leadership and Governance**

NEOGEN's President and Chief Executive Officer, John Adent, and NEOGEN's existing management team will continue to lead the combined company.

The size of the NEOGEN board will be increased and two new independent board members, to be designated by 3M, will be appointed at closing.

\*       \*       \*

**Advisors**

Centerview Partners LLC is serving as exclusive financial advisor and Weil, Gotshal & Manges LLP is serving as legal counsel to NEOGEN.

Goldman Sachs & Co. LLC is serving as exclusive financial advisor and Wachtell, Lipton, Rosen & Katz is serving as legal counsel to 3M. Goldman Sachs Bank USA and JP Morgan Securities are providing committed financing for the transaction.

**About NEOGEN**
NEOGEN Corporation develops and markets comprehensive solutions dedicated to food and animal safety. The company's Food Safety segment markets dehydrated culture media and diagnostic test kits to detect foodborne bacteria, natural toxins, food allergens, drug residues, plant diseases, and sanitation concerns. NEOGEN's Animal Safety segment is a leader in the development of genomic solutions along with the manufacturing and distribution of a variety of animal healthcare products, including diagnostics, pharmaceuticals, veterinary instruments, wound care, and disinfectants, as well as rodent and insect control solutions.

**About 3M**
At 3M (NYSE: MMM), we apply science in collaborative ways to improve lives daily as our employees connect with customers all around the world. Learn more

about 3M's creative solutions to global challenges at www.3M.com or on Twitter @3M or @3MNews.

18.    On March 18, 2022, Defendants caused to be filed with the SEC a Schedule 14A Preliminary Proxy Statement (the "Proxy Statement") pursuant to Section 14(a) of the Exchange Act in connection with the Proposed Transaction.

**B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

19.    The Proxy Statement, which recommends that Neogen shareholders vote in favor of, among other things, the issuance of Neogen common stock in connection with the Proposed Transaction (the "Stock Issuance"), omits and/or misrepresents material information concerning: (i) Neogen's and 3M Food Safety Business' financial projections; (ii) the financial analyses performed by Neogen's financial advisor, Centerview Partners LLC ("Centerview"), in connection with its fairness opinion; (iii) potential conflicts of interest involving Centerview; and (iv) potential conflicts of interest involving Company insiders.

20.    As a result of the omission of the material information (referenced below), the following sections of the Proxy Statement are false and misleading, among others: (i) Neogen's Reasons for the Transactions; (ii) Certain Projections; and (iii) Opinion of Neogen's Financial Advisors.

21.    It is imperative that the material information that was omitted from the Proxy Statement be disclosed to the Company's shareholders prior to the anticipated shareholder vote. Plaintiff may seek to enjoin Defendants from the shareholder vote on the Stock Issuance unless and until the below material misstatements and omissions are cured. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

**1.   Material Omissions of Neogen's and 3M Food Safety Business' Financial Projections**

22.    The Proxy Statement omits material information regarding Neogen's and 3M Food Safety Business' financial projections.

23.    The Proxy Statement fails to disclose the following regarding Neogen's and 3M Food Safety Business' financial projections: (1) all line items underlying Neogen's and 3M Food Safety Business' financial projections; (2) 3M Food Safety Business' net income projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

24.    The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of Neogen and the combined company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of Neogen and the combined company.

25.    Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction and Stock Issuance.

26.    The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**2.   Material Omissions Regarding Centerview's Analyses**

27.    In connection with the Proposed Transaction, the Proxy Statement omits material information regarding analyses performed by Centerview.

28.    With respect to Centerview's *Selected Public Comparable Companies Analysis*,"

the Proxy Statement fails to disclose: (1) the individual financial metrics of each company Centerview observed in its analyses, including each company's aggregate enterprise value, and estimated EBITDA for the twelve months ended May 31, 2022; and (2) the individual inputs and assumptions underlying the 2022E EV/EBITDA multiples of 32.5x to 37.5x.

29.     With respect to Centerview's "*Discounted Cash Flow Analysis*," the Proxy Statement fails to disclose: (1) the terminal values of each of Neogen and 3M's Food Safety Business; (2) the individual inputs and assumptions underlying the (i) range of exit multiples of 32.5x to 37.5x, and (ii) range of discount rates of 8.0% to 9.0%; and (3) Neogen's and 3M's Food Safety Business' respective net debt.

30.     The Proxy Statement states that, in connection with its fairness opinion, "Centerview reviewed . . . certain cost savings and operating synergies projected by the management of Neogen to result from the Transactions furnished to Centerview by Neogen for purposes of Centerview's analysis" (the "Synergies"). The Proxy Statement, however, fails to disclose the Synergies.

31.     Without the information described above, the Company's shareholders are unable to fully understand Centerview's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Stock Issuance.

32.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**3.  Material Omissions Regarding Potential Conflicts of Interest Involving Centerview**

33.     The Proxy Statement omits material information regarding potential conflicts of interest involving Centerview.

34.     The Proxy Statement states that "Neogen may pay Centerview an additional fee of up to $7.0 million in its discretion," but fails to disclose the circumstances under which Centerview may receive "an additional fee of up to $7.0 million," and whether the Company intends to pay Centerview such a fee.

35.     The Proxy Statement also fails to disclose the timing and nature of the past services that Centerview and/or its affiliates provided to Neogen and/or its affiliates.

36.     Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions.

37.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 4.     Material Omissions Regarding Company Insiders' Potential Conflicts of Interest

38.     The Proxy Statement omits material information regarding potential conflicts of interest involving Company insiders.

39.     The Proxy Statement fails to disclose the details of all employment-related and compensation-related discussions and negotiations concerning the Company's officers and directors, including the parties to such communications, when they occurred, and the specific content discussed/communicated.

40.     Any communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board.

41.     The above-referenced omitted information, if disclosed, would significantly alter

the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

42.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

43.     During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

44.     Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction and/or Stock Issuance. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

45.     The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction and Stock Issuance.

46.     By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

47.     Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

48.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

49.     The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

50.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

51.     In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements

11

or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction and/or Stock Issuance. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

52.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction and/or Stock Issuance. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

53.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

54.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction and Stock Issuance, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.     Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.     Granting such other and further relief as the Court may deem just and proper.

<u>**JURY TRIAL DEMANDED**</u>

Plaintiff hereby demands a trial by jury.

Dated: April 1, 2022                                   Respectfully submitted,

**FARNAN LLP**

/s/ Michael J. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market Street, 12th Floor
Wilmington DE 19801
Telephone: (302) 777-0300
Facsimile: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Counsel for Plaintiff*